IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

PINNACLE RESOURCES, INC.,            *
                                     *
            Plaintiff,               *
                                     *
vs.                                  *      No. 5:13CV00240 SWW
                                     *
CHARTIS SPECIALTY INSURANCE CO.,     *
                                     *
            Defendant.               *

**Opinion and Order**

Plaintiff Pinnacle Resources, Inc. ("Pinnacle") brings this action for a declaratory

judgment against  Chartis Specialty Insurance Company ("Chartis") seeking a declaration that

Chartis has a duty to defend and to indemnify for any damages that may be awarded against

Pinnacle in connection with a lawsuit pending against it in state court.  Before the Court is a

motion for summary judgment filed by Chartis to which Pinnacle responded.[1]  Also before the

Court is a motion for partial summary judgment filed by Pinnacle to which Chartis responded.[2]

Pinnacle filed a reply.   After careful consideration, and for the reasons that follow, the

defendant's motion is granted.

**I.**

Pinnacle is an Arkansas corporation located in Pine Bluff which manufactures and

supplies bulk lubricants.[3]  It is in the business of blending lubricants for third parties and for its

---

[1]Defendant's Statement of Undisputed Facts is filed as Ex.1 to its Motion for Summary Judgment, ECF No. 14-1.

[2]Plaintiff's Statement of Undisputed Facts is ECF No. 18.  Defendant responded to the Statement. *See* ECF No. 20.

[3]Pl's. Statement of Undisputed Material Facts at ¶ 1.

own account, and in the sale of such lubricants to the general public.[4]  Gibralter Lubricating

Services, Inc. ("Gibraltar") is an Arkansas corporation that is involved in the research,

development, and sale of specialty lubricating oils.  According to Gibralter, Pinnacle sent sales

representatives to Gibralter's office in Beebe, Arkansas, to solicit its business as a blender of

Gibralter's oil products.  Eventually, Gibraltar entered into an agreement with Pinnacle and

provided Pinnacle with its confidential proprietary formula to allow Pinnacle to prepare test

batches of a lubricant for Gibraltar.  In November 2010, Pinnacle blended a test sample of the

lubricant and thereafter blended one batch of lubricant which was sold to an established

customer of Gibraltar.  According to Gibraltar, Pinnacle demanded the right to be Gibraltar's

sole and exclusive blender. Gibraltar declined and terminated its relationship with Pinnacle in

January 2011.  Gibraltar alleges Pinnacle then began to market to and solicit business from

Gibraltar's customers and began to sell the oil lubricant blended using Gibraltar's proprietary

formula directly to Gibraltar's customers at a lower price than Gibraltar's pricing structure.

Gibraltar filed a complaint on April 30, 2012, in state court alleging a claim of trade secret

misappropriation and seeking an injunction.  Gibraltar also seeks damages for breach of contract

and, in the alternative, conversion.

During the period of June 1, 2010 through June 1, 2012, Pinnacle had a commercial

general liability insurance policy ("the Policy") issued by Chartis.[5]  Pinnacle tendered Gibralter's

complaint to Chartis but Chartis refuses to defend Pinnacle arguing the Gibralter claims are not

---

[4]Pl's. Compl., Ex. C (Complaint at ¶ 11.

[5]The Policy, No. EG 5299271 was in effect for the policy period from June 1, 2010- June 1, 2011 (Ex. A to Compl.).  It was renewed for the policy period of June 1, 2011 - June 1, 2012.  (Ex. B to Compl). *See also* Def's. Mot. Summ. J.,(ECF No. 14) Exs. B & C and Pl's. Reply (ECF No. 23), Exs. 1 & 2.

covered by the Policy and even it they are, exclusions apply.  Pinnacle moves for partial summary on Chartis's duty to defend.  Chartis moves for summary judgment on both the duty to defend and the duty to indemnify.

## II.

Summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(citation omitted)(emphasis in original).  A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby., Inc*., 477 U.S. 242, 249 (1986).

## III.

The parties agree that Arkansas substantive law governs this diversity action.   As a general rule, the duty to defend is determined by comparing the allegations in the underlying complaint with the scope of coverage provided under the insurance policy.  *See Murphy Oil USA, Inc. v. Unigard Security Ins. Co.*, 61 S.W.3d 807, 812-13 (Ark. 2001).  Under Arkansas law, the duty to defend is broader that the duty to indemnify, and it arises when there is a *possibility* that the injury or damage may fall within the liability policy coverage.  *Id*.  In testing the pleadings to determine if they state a claim within the policy coverage, a court must resolve any doubt in favor of the insured.  *Id*. at 814.  Courts are not, however, required by the rules of

contractual construction to stretch their imaginations to create coverage where none exists. *Pate v. U.S. Fid. & Guar. Co.*, 685 S.W.2d 530, 532 (Ark 1985). An intent to exclude coverage in an insurance policy must be expressed in clear and unambiguous language, and the burden is upon the insurance company to present facts that come within the stated exclusion. *See Union Bankers Ins. Co. v. National Bank of Commerce*, 408 S.W.2d 898, 900 (Ark. 1966).

The Policy states, in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**      **Insuring Agreement**

    **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We may, at our discretion, investigate any **occurrence** and settle any **claim** or **suit** that may result. But:

        **(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE;** and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B, medical expenses under Coverage C, or **loss** under Coverages D or E.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A, B and E.**

    **b.**      This insurance applies to **bodily injury** and **property damage** only if:

        **(1)** The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and

(2)  The **bodily injury** or **property damage** occurs during the policy period;

\* \* \*

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected or intended injury**

**Bodily injury** or **property damage** expected or intended from the standpoint of the insured. . . .

\* \* \*

**SECTION VI - DEFINITIONS**

\* \* \*

**29**.  **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**35.  Property Damage means:**

**Applicable to Coverages A and B**

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

Chartis argues that the allegations of the lawsuit do not state Gibraltar suffered property damage caused by an occurrence.[6]  The complaint alleges that Pinnacle caused Gibraltar to lose profits by obtaining its proprietary formula, blending a lubricant with that formula, and selling it

---

[6]The parties agree that Coverage B - Personal and Advertising Injury Liability - is not implicated in this action.

to Gibraltar's customers at a lower price.  Gibraltar makes no allegation that it lost the use of the formula although, as Pinnacle suggests, Gibraltar may have lost the exclusive use of the formula. The Court finds *Bridge Metal Indus., LLC v. Travelers Indem. Co.*, 812 F. Supp. 2d 527 (S.D.N.Y. 2011) helpful and persuasive.  In *Bridge Metal*, the court found that the insurer was not obligated to provide a defense to the insurer because the complaint did not allege property damage within the policy's definition.  The underlying lawsuit alleged that the insured used trade secrets and other proprietary information belonging to the plaintiffs for its own benefit.  The court said:

> While National's complaint could be read to allege the loss of the *exclusive* use of the drawings and other documents, 'exclusive use' is not included in the Policy's definition of property damage.  Even under the broad duty to defend and the liberal construction given to insurance policy language in these situations, National's allegations do not fall within the Policy's definition.  National was clearly concerned with Plaintiffs' use of the information and property, not National's own inability to use it.

812 F.Supp.2d at 546.  The Court finds Gibraltar's complaint does not allege loss of use of the property.

Chartis also argues that there is no allegation of property damage as defined by the Policy because there was no "occurrence."   Occurrence means an accident.  "We have defined an 'accident' as 'an event that takes place without one's foresight or expectation-an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected.'" *U.S. Fidelity & Guar. Co. v. Continental Cas. Co.*, 120 S.W.3d 556, 563 (Ark. 2003).  Chartis contends that the conduct alleged by Gibraltar - that Pinnacle improperly acquired and then sold lubricant blended with its secret formula - is and or is alleged to be

intentional.  The Court finds there are no allegations surrounding Gibraltar's claims that could indicate an accident.

Lastly, Chartis argues that even if the complaint could be read as to allege "property damage" caused by an "occurrence," coverage is precluded by the Expected or Intended Injury exclusion.  The Policy does not apply to property damage "expected or intended from the standpoint of the insured."  The Arkansas Supreme Court interpreted this exclusion to preclude coverage for "injuries which the average run of reasonable people would expect or intend to inflict by engaging in the conduct in question."  *CNA Ins. Co. v. McGinnis*, 666 S.W.2d  689, 691 (Ark. 1984).

The complaint alleges Pinnacle's actions caused Gibraltar to lose profits.  Any reasonable person would expect that the acquisition and use of a competitor's secret formula would result in a loss of profits.  Pinnacle argues that because Gibraltar did not allege that the damage caused by Pinnacle's alleged misappropriation of Gibraltar's secret formula was expected or intended by Pinnacle, there is a possibility that such damages were accidental under the Policy.

The Court finds that even if the complaint could be read to allege the loss of use of tangible property, the incident is excluded from coverage because the loss of use and resulting damage was a loss Pinnacle expected or intended to occur when it allegedly improperly obtained and misued Gibraltar's property.[7]

Pinnacle argues that any ruling on Chartis's motion for summary judgment as to its duty to indemnify would be premature.  Chartis contends that when the same reasons that negate a duty to defend - lack of "property damage" and lack of an "occurrence" - negate any possibility

---

[7]Chartis states it is not its position that the Coverage A exclusions for contractual liability, personal and adverstising injury, or punitive damages, on their own, would bar a duty to defend.  ECF. 19 at 11, n.4.

that the insurer will ever have a duty to indemnify, it is not premature to make a determination

on the duty to indemnify.  *See Medical Liability Mut. Ins. Co. v. Alan Curtis, LLC,* 519 F.3d 466

(8th Cir. 2008) (court determined insurer had no duty to defend or indemnify employee and had

duty to defend insured owner on all claims but only had duty to indemnify to with respect to one

claim).  *See also Harleysville Worchester Ins. Co. v. Diamondhead Property Owners Ass'n,*

2013 WL 1500709 *3 (W.D. Ark. April 11, 2013("if Court finds Harleysville has no duty to

defend . . . then it also has no duty to indemnify").

Because the Court finds there are no genuine issues of material fact in dispute and that

there is no coverage under the Policy, defendant's motion for summary judgment will be

granted.

## IV.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [ECF

No. 14] is granted.  Plaintiff's motion for partial summary judgment [ECF No. 16] is denied.

Plaintiff's complaint is dismissed.  A separate Judgment will be entered.

DATED this 1st day of August,  2014.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE